UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CRYSTAL GAIL BARNES, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Nos.: 3:15-CV-375-TAV<br>3:13-CR-45-TAV-CCS-5 |

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 [Doc. 1483]. Petitioner bases her request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague [*Id.*]. The United States responded in opposition [Doc. 1501], but Petitioner nevertheless requested that the Court "dismiss [her] enhanced sentence" based on an alleged "failure [of the United States] to prosecute" [Doc. 1510]. For the reasons discussed below, Petitioner's § 2255 motion [Doc. 1483] will be **DISMISSED** as untimely. Her motion based on an alleged failure to prosecute [Doc. 1510] will be **DENIED as moot**.

I.     BACKGROUND

From 2006 until mid-March 2013, Petitioner purchased or otherwise obtained 491 grams of pseudoephedrine which she then distributed to other co-defendants for them to manufacture at least 245 grams of methamphetamine [Doc. 136 ¶ 4]. She pled guilty to conspiring to manufacture at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) [*Id.* ¶ 1; Doc. 342]. Petitioner went on to "knowingly and voluntarily waive

the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255" except for motions raising "claims of ineffective assistance of counsel or prosecutorial misconduct" [Presentence Investigation Report ("PSR") ¶ 11(b)]. Consistent with 21 U.S.C. § 851, the United States filed timely notice of its intent to enhance Petitioner's sentence based on her prior felony drug convictions. [Doc. 299].

In calculating the applicable guidelines range, Petitioner's base offense level of 34 was derived from the drug quantity to which she had stipulated when pleading guilty [Doc. 908; PSR ¶¶ 25, 40]. After a three-level reduction for acceptance of responsibility, her total offense level was 31 [*Id.* ¶¶ 47–49]. Given her criminal history category of II, the corresponding guidelines range was 121 to 151 months' imprisonment [*Id.* ¶¶ 57, 76]. Petitioner was ultimately determined, however, to be subject to a statutorily-mandated minimum term of life imprisonment based on her prior felony drug convictions [*Id.* ¶¶ 75, 76]. Prior to sentencing, the United States filed a motion for downward departure under 18 U.S.C. § 3553(e) in light of Petitioner's substantial assistance. Granting this motion, the Court sentenced Petitioner to 215 months' imprisonment on May 30, 2014 [Doc. 1270].

Petitioner did not appeal her conviction or sentence, and the judgment became final on June 13, 2014. *See Sanchez Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes "final" for purposes of § 2255(f)(1) when the time for filing a direct appeal has elapsed); Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14-days after . . . the entry of . . . judgment."). She filed the current request for collateral relief on August 24, 2015, attempting to extend the holding in *Johnson* to invalidate the residual clause found in Section

2

Case 3:13-cr-00045-TAV-DCP   Document 1533   Filed 03/23/16   Page 2 of 10
PageID #: 6362

4B1.2(a) of the Sentencing Guidelines [Doc. 1483 (suggesting that her increased sentence was the result of a career offender enhancement under Section 4B1.1 of the Guidelines)].[1]

## II. TIMELINESS OF PETITIONER'S CLAIMS

Section 2255(f) provides that the one-year statute of limitations applicable to collateral challenges runs from the latest of: (1) "the date on which the judgment of conviction becomes final;" (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;" (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review;" or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). Petitioner's one-year period for requesting relief under subsection (f)(1) expired on June 13, 2015, nearly two-and-a-half months

---

[1] The ACCA mandates a 15-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual §4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

Case 3:13-cr-00045-TAV-DCP   Document 1533   Filed 03/23/16   Page 3 of 10
                           PageID #: 6363

before submission of the instant § 2255 motion. As such, viability of the petition hinges on whether the basis for relief contained therein triggers subsection (f)(3)'s renewed window for requesting relief. In other words, timeliness of the § 2255 motion depends on whether (1) the Supreme Court decision on which Petitioner relies amounted to recognition of a new right and (2) that right has been made retroactively applicable to cases on collateral review. The Court finds it need not address the first prong—whether *Johnson*'s holding extends to Section 4B1.2 of the Guidelines, thereby giving rise to a new right—because Petitioner has failed to establish that the proposed rule has been "made" retroactively applicable to cases on collateral review.

The United States Supreme Court explained in *Tyler v. Cain* that under 28 U.S.C. § 2244(b)(2)(A)—the state-prisoner corollary of § 2255(h)(2)—"'made' means 'held'" and, thus, a new rule or right is only "made" retroactive when the Supreme Court itself holds "that the new rule is retroactively applicable to cases on collateral review." 533 U.S. 656, 662 (2001). In her concurring opinion in *Tyler*, Justice O'Conner recognized that there were two ways in which the Court can make a rule retroactive: (1) by expressly stating that the new rule has such effect; or (2) "through multiple holdings that logically dictate the [same conclusion]." *Tyler*, 533 U.S. at 668 (O'Conner, J., concurring).[2] In an attempt to illustrate the second scenario, she explains a holding in "Case One that a particular type of rule applies retroactively" combined with a second holding in "Case Two that a given rule is of that particular type" necessarily means that the rule so referenced applies retroactively because the Court has "'made' the given rule retroactive"

---

[2] While Justice Thomas delivered the opinion of the Court, Justice O'Conner's concurrence represents the narrowest ground of agreement by a majority of the Justices, and thus, "the holding of the Court." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

4

through existing case law "'dictat[ing]' th[at] conclusion." *See id.* at 668–69 (noting the Court only makes "a rule retroactive . . . where [its] holdings logically permit no other conclusion than that the rule is retroactive.").

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court summarized the various ways in which new rules affect cases, explaining that newly announced rules only apply retroactively in limited situations. *Id.* at 351–52.

New substantive rules generally apply retroactively. *Id.* There are two types of new substantive rules: (1) decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley*, 523 U.S. at 620–21 (finding narrower interpretation of 18 U.S.C. § 924(c)(1)'s "use" prong amounted to new substantive rule retroactively applicable on collateral review because holding that a criminal statute does not reach certain conduct necessarily places previously-convicted defendants at risk of being punished for "an act that the law does not make criminal"), and (2) constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *Teague v. Lane*, 489 U.S. 288, 311 (1989); *see also Schriro*, 542 U.S. at 352–53 (articulating the above categories of new substantive rule); *Jones*, 689 F.3d at 624 (same). Examples of the latter category include rules that place a class of private conduct beyond the power of the state to proscribe, *see, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding Fourteenth Amendment forbids states from making illegal private, homosexual sodomy between consenting adults); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (holding the First Amendment forbids states from punishing an individual for burning the American flag in protest), and rules that prohibit a certain category of punishment for a class of defendants because of their status or offense, *see, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding the Eighth Amendment forbids states from "tak[ing] the life of a mentally

5

retarded offender"). All three forms of substantive rule—the first category recognized in *Bousley* and both subcategories of the class recognized in *Teague*—"apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make a crime' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 353 (quoting *Bousley*, 523 U.S. at 620).

By contrast, new procedural rules generally do not apply retroactively. *Id.* Procedural rules are defined as those rules that "regulate only the manner of determining the defendant's culpability." *Id.* at 351. Unlike substantive rules, which produce a class of persons subject to punishment the law does not condone, procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted." *Id.* "Because of this more speculative connection to innocence, [the Supreme Court has given] retroactive effect to only a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)). "The only example of such a watershed rule ever [recognized] . . . is the right to counsel, as set forth in *Gideon*." *Fulcher v. Motley*, 444 F.3d 791, 815 (6th Cir. 2006).

The Sixth Circuit has confirmed that the Supreme Court's holding in *Johnson* sets forth a new substantive rule to the extent that it narrows the scope of the ACCA because it "prohibits the imposition of [§ 924(e)'s 15-year statutory minimum] on those defendants whose status as armed career criminals is dependent on offenses that fall within the residual clause." *In Re Watkins*, 810 F.3d 375, 383 (6th Cir. 2015). In other words, "*Johnson* 'narrowed the class of people who are eligible for' an increased sentence under the Armed Career Criminal Act." *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015) (quoting *Bryant v. Warden FCC Coleman-Medium*, 738 F.3d

6

1253, 1278 (11th Cir. 2013)).  The same cannot be said about *Johnson*'s proposed impact on the class of people who are eligible for an enhanced sentence under the Guidelines.

Unlike the ACCA—a statute that shifts the defendant's penalty range and minimum and maximum terms of imprisonment—the Guidelines merely guide the execution of a court's discretion in selecting the appropriate sentence from within an otherwise stagnate range of lawful penalties.  *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (noting that the Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress").  Any change in a defendant's Guideline range based on *Johnson* would thus work a change in the procedure by which his or her sentence is selected, but it would not change the permissible range of punishments.  For example, a defendant who violates 21 U.S.C. § 841(a)(1) is subject to the lawful penalty range set forth in 21 U.S.C. § 841(b)(1)(A)—imprisonment for a term not less than ten years nor more than life.  *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  Alterations to that defendant's total offense level—whether by way of leadership enhancement, reduction for acceptance of responsibility, or career offender designation—merely shift his or her advisory range—the procedure used to identify the most appropriate sentence from within a larger range of lawful consequences—without altering the range of penalties condoned by § 841(b)(1)(A) or individuals subject those penalties under § 841(a)(1).  As such, the proposed rule cannot be said to narrow the scope of a penal statute or place particular persons beyond the state's power to punish.  *Cf. Humphress v. United States*, 543 F.3d 855, 862 (6th Cir. 2005) (finding rule announced in *Booker v. United States*, 543 U.S. 220 (2005)—that Guidelines are merely advisory and not mandatory—is a non-watershed, procedural rule); *Goode v. United States*, 305 F.3d 378, 385 (6th Cir. 2002) (finding rule announced in *Apprendi v. New Jersey*, 530 U.S. 466

(2000)—that facts which increases a statutory penalty range must be found by a jury beyond a reasonable doubt—is a non-watershed, procedural rule).

Moreover, the new procedural rule that would result from extending *Johnson*'s holding to the Guidelines would not be "watershed" because erroneously calculating a defendant's advisory Guidelines range does not render the resulting sentence unfair or unreliable in the way that complete deprivation of the right to counsel does for a trial. *Cf. United States v. Cronic*, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable"). Nor does the proposed rule alter the bedrock procedural elements essential to the fairness of a sentencing proceeding. *See Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013) (explaining rules derived from the application of pre-existing legal principles in a new context do not "effect a sea change in criminal procedure").

In sum, while *Johnson* effected a substantive change in the law by altering the range of lawful sentences under the ACCA, extension of that same decision to the Guidelines would result in only procedural changes to the sentencing process. Because the Supreme Court has not made non-watershed procedural rules retroactively applicable on collateral review, Petitioner cannot rely on the renewed one-year limitations period under § 2255(f)(3). *See, e.g.*, *In re Rivero*, 797 F.3d at 989 (assuming *Johnson* applies to the residual clause of Section 4B1.2(a)(2) and concluding that "no combination of holdings of the Supreme Court 'necessarily dictate'" that the resulting rule should be applied retroactively on collateral review); *In re Gieswein*, 802 F.3d 1143, 1147–48 (10th Cir. 2015) (same). Petitioner's failure to demonstrate that the appended ground equitably tolled § 2255(f)(1), relates back to a timely pleading, or triggered one of the

8

alternative statutory periods found in §§ 2255(f)(2), (3), and (4) leads the Court to conclude that his petition is untimely.[3] The petition [Doc. 1483] will be **DISMISSED WITH PREJUDICE**.

## IV. REMAINING NON-DISPOSITIVE MOTION

Three months after the United States' responded in opposition to collateral relief on November 3, 2015, Petitioner filed a motion citing the United States' "failure to prosecute" or "move the case forward" and requesting "dismissal of her enhanced sentence" on that basis [Doc. 1510 (explaining that several months had passed "without any action form the [United States] to move th[e] case forward")]. The motion is both meritless and, in light of this Court's resolution of the underlying petition, moot; it will be **DENIED** accordingly.

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 1483] will be **DISMISSED** as untimely. Petitioner's remaining motion [Doc. 1510] will be **DENIED as moot**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of

---

[3] Even if *Johnson* were deemed retroactively applicable to cases on collateral review, it does not undermine Petitioner's sentence. She mistakenly suggests that her sentence resulted from application of the career offender enhancement found in Section 4B1.1 of the Guidelines when, in fact, her 215-month term of incarceration was derived from granting the United States' motion for downward departure from § 841(b)(1)(A)'s otherwise applicable statutory mandatory term of life imprisonment [Doc. 1270]. To the extent Petitioner contests the continued validity of her statutory enhancement under § 841, *Johnson* offers no basis to disturb that statute. Quite simply, *Johnson* "has no bearing" on whether a prior conviction qualifies as a serious drug offense under the Armed Career Criminal Act, a controlled substance offense under the Guidelines, or a prior felony drug conviction under § 841(b)(1)(A).

9

appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE
